# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Demarcus D. Latin, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 18 CV 02717 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Brian Johnson, *et al.*, ) | |
| ) | |
|     *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Demarcus D. Latin, brought this *pro se* action under 42 U.S.C. § 1983 concerning events that occurred at the Winnebago County Jail. Defendants asserted the affirmative defense of failure to exhaust administrative remedies. On September 20, 2019, this Court conducted an evidentiary hearing on this affirmative defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Both parties consented to the jurisdiction of the U.S. Magistrate Judge for purposes of the *Pavey* hearing. For the following reasons, the Court holds that Winnebago County Jail's grievance procedure was unavailable to Plaintiff and as such he is excused from his obligation to exhaust his administrative remedies.

By November 15, 2019, the parties are directed to file a proposed case management order, using the form available on Judge Jensen's webpage at www.ilnd.uscourts.gov. Defense counsel shall coordinate with plaintiff in order to draft and file the proposed case management order. A future status hearing will be set by minute entry.

## I. BACKGROUND

Plaintiff alleges an excessive force claim against Defendant Brian Johnson and a failure to intervene claim against Defendant Lt. Lukowski for events that occurred at the Winnebago

County Jail on November 18, 2017.  Dkt. 33.  Before filing a grievance, Plaintiff filed his complaint in this lawsuit on April 10, 2018.  Dkt. 1.  Plaintiff did not file a grievance concerning the alleged events until September 5, 2018.  Dkt. 71, Ex. 3 at 70.  Plaintiff later filed an amended complaint, and Defendants answered and asserted, as an affirmative defense, that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).  *See* 42 U.S.C. § 1997e.  On September 20, 2019, the Court held a *Pavey* hearing on the exhaustion issue.  *See Pavey*, 544 F.3d at 742.

Anthony Ponte, who works as an administrative sergeant over the corrections bureau at the Winnebago County Jail, testified at the hearing.  He stated that Winnebago County Jail had a grievance procedure in 2017.  That procedure was set out in the Inmate Handbook.  Since 2007, Inmate Handbooks were available only via the facility computer kiosks (hereinafter "kiosks") and the tablets.[1]  Kiosks were in each housing unit, or pod, at the Winnebago County Jail, including in segregation and maximum-security units.  The Inmate Handbook, revised on November 10, 2017, describes the inmate grievance procedure and requires, among other things, that grievances be filed as soon as possible but no later than five days after the alleged incident.  Dkt. 71, Ex. 4 at 5.

Sergeant Ponte testified that during intake at the Winnebago County Jail, inmates are informed of the facility rules and that the Inmate Handbook is available electronically on the kiosks.  An inmate signs a document during the intake procedure indicating that he or she has been informed of this information.  Defendants did not admit into evidence any such written acknowledgment from Plaintiff.  On cross examination, Sergeant Ponte agreed that it was

---

[1] While Sergeant Ponte mentioned tablets, there was no further testimony offered as to how inmates accessed the tablets (and therefore, the Inmate Handbook), whether Plaintiff had a tablet or to otherwise show the availability of the Inmate Handbook on tablets.

possible that an inmate may not be told that the Inmate Handbook is on the kiosks when he or she goes through intake. Sergeant Ponte went on to state that he could not state with certainty that Plaintiff was told about the Inmate Handbook and that it was located on the kiosks because he did not know when Plaintiff went through intake or the circumstances of his intake.

Sergeant Ponte also testified that when inmates go to their housing unit, the officer in that housing unit would tell the inmates where the kiosks were and where to find the Inmate Handbook. The officer would also tell the inmates that it is the inmate's responsibility to read and follow the Inmate Handbook. Finally, Sergeant Ponte testified to certain records which identified Plaintiff's housing location while at the Winnebago County Jail. According to these records, Plaintiff was located on the third-floor housing unit from June 1, 2017 through September 5, 2017.[2] Dkt. 71, Ex. 6 at 3. According to duty roster records, Officer Michael Delgado was assigned to work during the day shift on the third-floor housing unit from June 2, 2017 through July 19, 2017. Dkt. 71, Ex. 7 at 1–2.

Michael Delgado, a correctional officer at Winnebago County Jail, also testified. He stated that he had been a POD officer for the last ten years at the Winnebago County Jail. He testified that inmates are informed about the jail's rules and regulations through the use of an orientation video. This video is played twice a week. When he gets a call from central control that the video is available, he yells loudly to the inmates that the video is playing on the television and that they should watch it. Officer Delgado tells the inmates that there is an "orientation video." He does not tell them anything else about the content of the video. He stated that he cannot force the inmates out of their cells, but he does ask them to watch it and then he opens the cell doors so they can come out. He testified that, as part of his custom and

---

[2] This time frame appears to have no significance other than corresponding to the period of time before the alleged incident when Officer Michael Delgado was assigned to Plaintiff's housing unit.

3

practice, he asks inmates to watch and he tells them that it is important. Officer Delgado testified that he followed the same procedures in June and July 2017.

Officer Delgado testified that it is possible that when the orientation video is playing that an inmate could be at class, in health care, at religious service, or in court. However, because the video is played twice a week, the longer the inmate is in the jail the less likely it is that he or she is not present when it is played.

The video was played and admitted into evidence at the hearing. That video is approximately nine minutes in length and goes over numerous topics: Medical Requests and Treatment, Visitations, Programs Offered, Haircuts, Commissary and Rules, Expectations, Privileges and Discipline. Dkt. 71, Ex. 8. In the Rules section, the video informs inmates that "the kiosk system in each housing unit has a digital version of the Inmate Handbook that can be accessed during your time out of your cell." *Id.* It further states "if you have any questions regarding the facility rules, refer to the complete rule listing on the Kiosk system or ask your housing unit officer for clarification." *Id.* The video also states that inmates can access the Inmate Handbook on the kiosk to learn more about the disciplinary hearing process. *Id.* Other than referencing the Inmate Handbook, the video did not address Winnebago County Jail's grievance procedure.

Finally, Plaintiff testified at the hearing. He testified that he filed his complaint in this lawsuit on April 10, 2018. Following the alleged events on November 18, 2017, Plaintiff filed several unrelated requests via the inmate kiosk in November and December of 2017, but he did not file a grievance regarding the events alleged in this lawsuit until September 5, 2018, about ten months after the events and five months after filing this lawsuit. Dkt. 71, Ex. 3 at 58–60, 70. Plaintiff testified that while he learned about the grievance process from speaking with other

inmates, he did not know that there was a requirement that grievances must be filed within five days of the incident or that a grievance had to be filed prior to bringing a lawsuit. He testified that he was never told that the Inmate Handbook was on the kiosks and that he never saw the orientation video while at the Winnebago County Jail. He questioned why the jail did not provide paper copies of the Inmate Handbook to inmates or why the jail did not post signs to notify inmates that the Inmate Handbook was available on the kiosks. Plaintiff also claimed that the grievance process was "very detailed," that he was terrified of filing a grievance immediately after the alleged events, and that the grievance process did not allow for the recovery of money damages so there was no reason to file a grievance. He asked the Court to excuse his failure to exhaust his administrative remedies "in the interests of justice."

## II. LEGAL STANDARDS

The PLRA requires an inmate to properly exhaust his administrative remedies before filing an action concerning prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Pavey*, 544 F.3d at 742 (providing that the district court can conduct a "hearing on exhaustion and [permit] whatever discovery relating to exhaustion he deems appropriate."). Defendants bear the burden of proving a failure to exhaust defense. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard." *Lloyd v. Dart*, No. 14 C 69, 2016 WL 232422, at *2 (N.D. Ill. Jan. 20, 2016). The exhaustion requirement applies to

excessive force cases. *Porter v. Nussle*, 534 U.S. 516, 526 (2002). It also applies to pretrial detainees. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In order to properly exhaust, an inmate must submit complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate must exhaust administrative remedies even if he believes that the process is futile or requests relief that the relevant administrative body does not have the power to grant. *Dole*, 438 F.3d at 808–09. The Court may resolve disputed factual questions that bear on exhaustion. *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015).

### III. DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed because he did not exhaust his administrative remedies before he filed suit. The Winnebago County Jail's grievance procedure, as set forth in the Inmate Handbook, states that inmates are to file a grievance no later than five days after the date that the alleged incident took place. Dkt. 71, Ex. 4 at 5. They are to file grievances using the kiosk system. The alleged incident occurred on November 18, 2017, and Plaintiff did not file his grievance until September 5, 2018. Dkt. 71, Ex. 3 at 70. Moreover, Plaintiff did not file any grievance regarding the incident set forth in his complaint until after he filed this lawsuit.

Plaintiff does not dispute that he filed his lawsuit before his grievance or that his grievance was untimely. Instead, he argues that his failure to exhaust administrative remedies should be excused because: 1) while he knew how to file a grievance, he did not know the time limits the jail imposed on filing grievances; 2) the filing of a grievance would have been futile

6

because the County Jail could not award money damages; 3) he was afraid to file a grievance because of the excessive force used against him by Defendant; and 4) the grievance procedure was very complicated and did not provide a tab for guard attacks.

The Court begins by addressing the last three arguments as they can be disposed of quickly. Plaintiff contends that the filing of a grievance would have been futile because the jail could not award money damages. The U.S. Supreme Court held, in *Booth v. Churner*, that inmates who seek money damages must still exhaust their administrative remedies even if the prison's grievance system provided no damages remedy. *Booth v. Churner*, 532 U.S. 731, 740 (2001). As such, this argument has no merit.

Likewise, Plaintiff's argument that he was afraid to file a grievance because of the excessive force used against him by Defendant is without merit. Threatened retaliatory conduct by jail officials to filing grievances may render the grievance process unavailable. *See Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) ("[T]hreats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance[.]"); *Madyun v. Cook*, 204 F. App'x 547, 548 (7th Cir. 2006) ("We do not doubt the correctness of [plaintiff's] suggestion that threats by prison officials could in principle render an administrative remedy unavailable."). However, Plaintiff has not testified to nor provided any evidence of credible threats, intimidation, or retaliation by Defendants or other jail officials for filing a grievance. Plaintiff has testified only that he was scared after the alleged incident of excessive force. Without more, this does not operate to make the grievance procedure unavailable. *See, e.g.*, *Goldsmith v. Zolecki*, No. 12 C 3965, 2013 WL 5699302, at *5 (N.D. Ill. Oct. 18, 2013) ("While [plaintiff] does allege widespread retaliation at WCADF, his allegations are unsupported by evidence, and he admitted in his deposition that when he allegedly submitted the grievance

regarding this incident, he had only been at the WCADF for a short period and had suffered no retaliation."); *B v. Duff*, No. 06 C 4912, 2009 WL 2147936, at *10 (N.D. Ill. July 17, 2009) (finding nothing in the record to support plaintiffs' contention that administrative remedies were unavailable where there was no evidence that plaintiffs attempted to file a grievance, that defendants intimated or threatened plaintiffs into not pursuing a grievance, or that plaintiffs were retaliated against for attempting to pursue administrative relief).

Plaintiff's argument that his failure to exhaust administrative remedies should be excused because the grievance procedure was very complicated and did not provide a tab for guard attacks is also unavailing. Plaintiff testified at the *Pavey* hearing that he knew how to file a grievance after talking with other inmates. He simply did not know the time limits for filing a grievance.

Accordingly, Plaintiff's strongest argument is that he should be excused from following the grievance process because he was not made aware of the time limits for filing a grievance. It must be noted that inmates are required to exhaust only those grievance procedures that are "available," within the meaning of the PLRA. *King*, 781 F.3d at 893 (7th Cir. 2015). "When administrative procedures are clearly laid out . . . an inmate must comply with them in order to exhaust his remedies." *Pavey*, 663 F.3d at 905. However, "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King*, 781 F.3d at 896; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("But 'unavailability' extends beyond 'affirmative misconduct' to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process."); *White*, 800 F.3d at 397 (grievance procedures were unavailable where prisoner was "[u]ninformed about any deadline for filing a grievance[.]"). Thus, when administrative remedies are effectively made

8

unavailable by the inaction of prison officials, the prisoner may file suit without pursuing those unavailable remedies to conclusion.

This Court reiterates that it is Defendants' burden to prove Plaintiff's failure to exhaust. Accordingly, "[i]t [is] not [Plaintiff's] burden to establish that the grievance process was *unavailable*; it [is] the officers' burden to show that [Plaintiff] did not exhaust *available* remedies." *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) (emphasis added). The Court finds that Defendants have not meet their burden.

In arguing that the grievance procedure was available to Plaintiff, Defendants first claim that Plaintiff's testimony that he was unaware of the time limits to file a grievance is not credible. Defendants point to the numerus grievances that Plaintiff filed[3] and argue that this shows that Plaintiff was informed about the grievance process. Plaintiff argues that while he knew how to file grievances after talking with other inmates, he did not know about the time limits to file a grievance. This Court agrees that the filing of grievances, without more, does not establish that Plaintiff knew that he had to file a grievance within five days of the incident. In fact, a review of the grievances shows that when Plaintiff filed a grievance beyond the five-day limit, the jail never notified Plaintiff of his untimeliness. For example, Plaintiff filed a medical grievance on September 27, 2017 relating to a September 7, 2017 visit. Dkt. 71, Ex. 3 at 53. Despite the untimeliness of this grievance, the response to the grievance made no mention of the five-day requirement. *Id.* Thus, the filing of numerous grievances does not demonstrate that Plaintiff knew the time limit for filing grievances. *See Horne v. Nevil*, No. 6:15-cv-44, 2017 U.S. Dist. LEXIS 44613, at *16 n.5 (S.D. Ga. Mar. 7, 2017) (finding that the fact that plaintiff

---

[3] Plaintiff filed twenty-six grievances between 2015 and 2017. *See generally* Dkt. 71, Ex. 3.

9

filed numerous grievances did not establish that plaintiff knew about the appeal process where none of the grievances were appealed).

Defendants next point to an alleged inconsistency in Plaintiff's testimony. Plaintiff testified that he did not file a timely grievance because he was not aware of the time limits, while also testifying that he did not file a timely grievance because he was afraid of a possible retaliation by jail officials. The Court, however, does not view both reasons as mutually exclusive. Plaintiff testified that while he was scared after the officer attacked him that was not the main reason why he did not file a grievance. The main reason was that he did not know the time limit. The Court finds Plaintiff's testimony on this point credible given that Plaintiff testified that while at a different facility he learned about the need to file a grievance before filing a lawsuit, and he then filed his grievance about the attack shortly after he returned to Winnebago County Jail. He filed the grievance even though he was in the same facility as the officer who allegedly attacked him. Thus, he filed despite being scared. The Court finds that this adds credibility to his statement that the main reason he did not file his grievance was because he did not know the time limit. Therefore, the Court rejects both of Defendants' credibility arguments and finds that Plaintiff's claim that he did not timely file his grievance because he did not know of the applicable time limits to be credible. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At Pavey hearings, judges may hear evidence, find facts, and determine credibility.") (citing *Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011)).

Even though Plaintiff was unaware of the five-day time limit to file a grievance, that does not end the inquiry. The Seventh Circuit recently held that an inmate's subjective unawareness of a grievance procedure does not excuse his non-compliance so long as "the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906

F.3d 530, 538 (7th Cir. 2018). Simply providing an inmate with an informational handbook outlining the grievance procedure has been deemed to be adequate notice. *Russell v. Unknown Cook Cty. Sheriff's Officers*, No. 03 C 3786, 2004 WL 2997503, at *4 (N.D. Ill. Dec. 27, 2004) (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 999 (6th Cir. 2004)). Furthermore, posting the grievance procedure in such a manner that the prisoner could reasonably be expected to see it would also suffice to make the grievance procedure available. *See Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001).

Thus, this Court must determine whether Defendants have shown, by a preponderance of the evidence, that the Winnebago County Jail took reasonable steps to apprise Plaintiff of the grievance procedures, including the time limits required in those procedures. There is no dispute that the five-day time limit to file a grievance is clearly set forth in the Inmate Handbook. However, Plaintiff testified that he did not receive a copy of the Inmate Handbook, and Defendants admit that paper copies of the Inmate Handbook have not been provided to inmates at the Winnebago County Jail since 2007.

Defendants' witnesses testified that the Inmate Handbook was located on the kiosks. However, Plaintiff testified that he was unaware that the Inmate Handbook could be found on the kiosks. Defendants did not offer testimony that Plaintiff was ever personally told that the Inmate Handbook could be found on the kiosks. Although Sergeant Ponte testified that during intake inmates are informed that the Inmate Handbook is available on the kiosks and sign a document confirming they were informed of this information, no written acknowledgement from Plaintiff was admitted into evidence.

Rather, Defendants provided testimony that, between June and July of 2017, Officer Delgado played an orientation video twice a week on the television in Plaintiff's housing unit

11

and that video informed inmates that the Inmate Handbook was available on the kiosks. He did not inform the inmates about the content of the video or that it contained information about the grievance procedure or other important rules of the jail. He simply yelled or spoke loudly that an orientation video was playing and that the inmates should watch it.

It has been held that grievance procedures were not available where the grievance procedure was only available via slideshow on channel 7 of dayroom televisions. *Lawrence v. Richardson*, No. 1:13-CV-01250-SEB-DM, 2014 WL 3341600, at *5 (S.D. Ind. July 7, 2014). In such a situation, the court held that even though jail officials may have posted the policy for inmates, there was no evidence to establish that Plaintiff actually saw the policy or in fact knew where or how to access it. *Id.* (citing *Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005)).

Likewise, here, assuming the content of the orientation video was sufficient to inform Plaintiff of the grievance procedures, Plaintiff testified that he did not see that orientation video while he was detained at the Winnebago County Jail. Defendants provided no testimony that Plaintiff was present when this video was played and admitted that inmates could be off the floor for classes, court, religious services, etc. Furthermore, Defendants provided no other evidence that Plaintiff knew where or how to access the Inmate Handbook.

Rather than providing the inmates with paper copies of the Inmate Handbook, the jail only provides access to the Inmate Handbook via the kiosks. Without any evidence to show that Plaintiff was informed that the Inmate Handbook was available on the kiosks at intake, the only way Plaintiff would be notified was via the orientation video. This video is only played on a television in Plaintiff's housing unit at random times twice per week. Notification via this method required Plaintiff to be lucky enough to be in the housing unit at these random times. Even if Plaintiff were in the housing unit when the video was being played, he would also need

to be able to hear Officer Delgado announce "loudly" that the video was playing. Based on the evidence presented to the Court, the steps Defendants took did not result in the posting of the grievance procedure in such a manner that Plaintiff could be reasonably expected to see the video, let alone be on notice of the grievance procedures. *See Hall*, 2001 WL 111019, at *2.

Thus, the Court excuses Plaintiff's failure to exhaust his administrative remedies because he did not know the time limits of the grievance procedures and Defendants have not carried their burden of proving, by a preponderance of the evidence, that the jail took reasonable steps to inform Plaintiff about the required grievance procedures.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Plaintiff is excused for failing to exhaust his administrative remedies.

Date: October 16, 2019    By: *Lisa A.*
　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　United States Magistrate Judge